UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ANTHONY VEGNANI, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 19-11291-LTS |
| MEDLOGIX, LLC, | ) ) ) | |
| Defendant. | ) ) | |

ORDER ON MOTION TO COMPEL (DOC. NO. 49)

September 21, 2020

SOROKIN, J.

Plaintiff Anthony Vegnani brings suit against Defendant Medlogix, LLC, to recover on a judgment Vegnani holds against Mass Medical Services, Inc., and against Mass Medical's former owner Michael Deleo. Vegnani alleges that Medlogix is the corporate successor of Mass Medical by virtue of an agreement Medlogix entered into with Deleo in the fall of 2017. Doc. No. 1.[1] Medlogix denies this, arguing that its agreement with Deleo was merely an employment contract and does not render Medlogix liable for any judgments against either Deleo or Mass Medical. Doc. No. 50 at 1. Vegnani now moves to compel Medlogix to produce all relevant communications between Deleo, Medlogix, and Medlogix's counsel that occurred after this lawsuit began. Doc. No. 49. Medlogix objects on the grounds that the communications are protected by attorney–client privilege and by the common interest privilege. Doc. No. 50.

After careful review, the Court DENIES Vegnani's motion to compel.

---

[1] Citations to "Doc. No. __" reference documents appearing on the court's electronic docketing system; pincites are to the page numbers in the ECF header.

1

I.  DISCUSSION

Medlogix has turned over its communications with Deleo from the time the parties negotiated the fall 2017 transaction, as well as all of the relevant communications it had with Deleo over the following year and a half.  Id.  The only dispute is over communications made after this lawsuit was filed in 2019.  Vegnani asserts it is entitled to communications between Deleo and Medlogix's counsel, and between Deleo and Medlogix management at the direction of Medlogix's counsel.  See Doc. No. 49 at 3, 4.  Medlogix asserts these communications were made to prepare the company's defense to Vegnani's suit and are therefore privileged.  See Doc. No. 50 1, 3.

Vegnani argues that he is entitled to the post-suit communications between Deleo and Medlogix's counsel and management because "Medlogix does not need information from Deleo to defend itself from Vegnani's claims."  Id. at 3–4.  He points out that his claim challenges the "transaction itself," something Medlogix's management were directly involved in, and therefore the privilege is inapplicable because the company's management did "not need information from Deleo about why it followed through with the transaction or why it structured the transaction as it did."  Id. at 4.  He argues in the alternative that any information Deleo holds that is relevant to the lawsuit was obtained prior to his employment with Medlogix and therefore falls outside the scope of the privilege.  Id.

The attorney–client privilege "protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice." Mississippi Pub. Employees' Ret. Sys. v. Bos. Sci. Corp., 649 F.3d 5, 30 (1st Cir. 2011) (footnote omitted) (quoting Upjohn Co. v. United States, 449 U.S. 383, 394–95 (1981)).  "By safeguarding communications between client and lawyer, the privilege encourages full and free

2

discussion, better enabling the client to conform his conduct to the dictates of the law and to present legitimate claims and defenses if litigation ensues." In re Keeper of Records, 348 F.3d 16, 22 (1st Cir. 2003).

Originally, the privilege only applied to communications between a corporations' senior management and its attorneys. To facilitate the information-gathering function of the privilege, the Supreme Court extended the privilege to lower-level corporate employees in Upjohn Co. v. United States, 449 U.S. 383 (1981).[2] There, the Supreme Court reasoned that the privilege protects "not only the giving of professional advice to those who can act on it, but the giving of information to the lawyer to enable him to give sound and informed advice." Upjohn, 449 U.S. at 390. The Supreme Court's analysis in Upjohn was guided by five factors: (1) the communications were made by corporate employees to corporate counsel at the direction of superiors in order for the corporation to secure legal advice from counsel; (2) the information needed by corporate counsel in order to formulate legal advice was not available to upper-echelon management; (3) the communications concerned matters within the scope of the employee's corporate duties; (4) the employees were sufficiently aware that the reason for communication with counsel was so the corporation could obtain legal advice; and (5) the communications were considered confidential and they remained confidential. See id. at 394–95.

---

[2] In diversity cases such as this, the scope of the attorney–client privilege exception is determined by state law. See Vicor Corp. v. Vigilant Ins. Co., 674 F.3d 1, 17 (1st Cir. 2012) (citing Fed. R. Evid 501). However, Massachusetts courts are generally willing to "follow federal precedent concerning the nature of the attorney-client privilege . . . in the area of the corporate attorney-client privilege." See Nat'l Employment Serv. Corp. v. Liberty Mut. Ins. Co., No. 93-2528-G, 1994 WL 878920, at *1 (Mass. Super. Dec. 12, 1994) (citing Commonwealth v. Goldman, 395 Mass. 495, 502 (1985)); see also In re Grand Jury Investigation, 437 Mass. 340, 355 (2002).

Vegnani argues that the Medlogix's attorney–client privilege should not cover Deleo's post-suit communications for two reasons. First, Medlogix's upper management already held all the relevant information Deleo possessed. Second, any relevant information Deleo possessed was acquired before he was employed by Medlogix. See Doc. No. 49 at 3–4. Neither argument succeeds.

The record does not support Vegnani's argument that Medlogix's management already possessed all relevant information known by Deleo. Vegnani is correct that Medlogix knew the details of the fall 2017 transaction and knew its own motivations for entering into that deal. See id. But Deleo was intimately familiar with the details of the action which spawned the judgment Vegnani now seeks to enforce against Medlogix, having been a party to that lawsuit himself. What's more, Deleo also has information about his former company, Mass Medical, that Medlogix may not hold. The fact that Medlogix's management was "directly involved" in the fall 2017 transaction does not mean that they possessed every and all piece of information that may be relevant to the current suit. They are thus entitled to gather that information and can rely upon the protections of the privilege while doing so.

Vegnani does not cite any authority to support his argument that Deleo's communications should be stripped of privilege because they relate information he learned prior to his employment with Medlogix. See id. But Upjohn itself lends some support to Vegnani's position, given that one of the factors the Supreme Court relied was that the communications at issue concerned matters within the scope of the employee's corporate duties. See Upjohn, 449 U.S. at 394. Indeed, the Upjohn Court reserved judgment on the analogous question of whether the attorney–client relationship would extend to communications from former employees. See id. at 394 n.3.

Those courts which have addressed whether the privilege extends to former employees have largely concluded that it does, including two courts in this District.  See In re Coordinated Pretrial Proceedings, 658 F.2d 1355, 1361 n.7 (9th Cir. 1981); Miramar Const. Co. v. Home Depot, Inc., 167 F. Supp. 2d 182, 184–185 (D.P.R. 2001); Chancellor v. Boeing Co., 678 F. Supp. 250, 253 (D. Kan. 1988); Amarin Plastics, Inc. v. Maryland Cup Corp., 116 F.R.D. 36, 41 (D. Mass. 1987); Command Transp., Inc. v. Y.S. Line (USA) Corp., 116 F.R.D. 94, 96–97 (D. Mass. 1987); Porter v. Arco Metals, 642 F. Supp. 1116, 1117–18 (D. Mont. 1986).  These courts concluded that extending the privilege in these circumstances was "with the purposes underlying the attorney-client privilege, to wit: to safeguard the communications between lawyer and client to encourage disclosures by the client to counsel that better enables the client to conform its conduct to the law and to present legitimate claims and defenses when litigation arises." Miramar Const., 167 F. Supp. 2d 182, 184 (D.P.R. 2001).

This Court's own research has uncovered only one case addressing whether the Upjohn privilege should extend to communications relaying information obtained before employment began.  In that case, the Court concluded that such communications fall within the privilege because Upjohn teaches "it is the process of uninhibited client communication in securing legal advice which is deserving of the privilege's protection."  Baxter Travenol Labs., Inc. v. Lemay, 89 F.R.D. 410, 414 (S.D. Ohio 1981).  The Baxter Court noted that client communications with counsel often contain information obtained from third parties and yet remain privileged. Analogizing, the Baxter Court reasoned that an employee relaying information they obtained from a third-party non-employee was not so different from an employee relaying information they themselves obtained prior to beginning employment.  See id.

This Court finds the logic of Baxter compelling. The purpose of the privilege, after all, is to protect communication and not to protect information.  See Upjohn, 449 U.S. at 395–96.  The Court therefore holds that Deleo's communications fall within the scope of privilege.  The Court need not also determine whether the common interest exception applies to the communications.

II.     CONCLUSION

For the reasons stated, the Court DENIES Vegnani's motion to compel (Doc. No. 49).

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge