UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ANTHONY VEGNANI, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 19-11291-LTS |
| MEDLOGIX, LLC, | ) ) ) | |
| Defendant. | ) ) | |

ORDER ON MEDLOGIX, LLC'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 58)

April 7, 2021

SOROKIN, J.

    Anthony Vegnani has sued Medlogix, LLC, in an effort to recover on a state-court judgment he holds against Mass Medical Services, Inc. ("MMS"). Medlogix seeks summary judgment, arguing Vegnani "has no reasonable expectation of proving" that, through agreements with MMS's founder and president, Medlogix became the corporate successor of MMS. Doc. No. 58 at 11. Vegnani opposes summary judgment, urging that material facts are disputed and require resolution at trial. Doc. No. 62. The Court heard oral argument on March 31, 2021.

    Several facts central to this action are not in dispute. Nearly thirty years ago, Michael Deleo founded MMS, a company that primarily coordinated independent medical examinations ("IMEs") for insurance companies. Doc. No. 63 at 1.[1] Vegnani, who has a background in finance, joined MMS as Deleo's partner in 2001. Id. at 1-2. Deleo fired Vegnani in 2014 and, thereafter, was MMS's sole shareholder. Id. at 2-3. Vegnani sued MMS and Deleo in state

---

[1] Citations to "Doc. No. __" reference documents appearing on the court's electronic docketing system; pincites are to the page numbers in the ECF header.

1

court, seeking severance payments pursuant to the terms of a written employment agreement.  Id. at 3.  There is no dispute that, as a result of the state-court action, Vegnani holds a valid and final judgment for more than $600,000 against Deleo and MMS, who are liable jointly and severally.  Doc. No. 59-1 at 435.

While the state-court action was pending but before judgment entered, Deleo began discussions with Medlogix, a company looking to expand its presence in New England and whose menu of services included coordinating IMEs.  Doc. No. 63 at 3-4, 19.  Those discussions ultimately led to written agreements between Deleo and Medlogix pursuant to which Deleo agreed to dissolve MMS, which was struggling financially, and join Medlogix first as an "independent contractor" and later as a vice president of sales.  Doc. No. 59-1 at 382-89, 416-29.  All parties agree that the written agreements defining the terms of Deleo's transition from MMS to Medlogix did not expressly describe a merger of MMS with Medlogix.  Id.

The parties dispute whether Medlogix is liable for Vegnani's state-court judgment as a result of its relationship with Deleo, but they agree that resolution of this question turns on the doctrine of successor liability under Massachusetts law.  That doctrine "is equitable in both origin and nature," requiring evaluation of "a transaction according to its real nature, looking through its form to its substance and intent."  Milliken & Co. v. Duro Textiles, LLC, 887 N.E.2d 244, 257 (Mass. 2008).  To establish that Medlogix is the corporate successor to MMS and, thus, is liable for the judgment against Deleo and MMS, Vegnani must make two showings.  First, he must prove that Medlogix received "all, or substantially all," of MMS's assets as a result of its agreements with Deleo.  Premier Capital, LLC v. KMZ, Inc., 984 N.E.2d 286, 292 (Mass. 2013).  Then, he must demonstrate that one of the following scenarios applies:  1) Medlogix "expressly or impliedly assume[d]" MMS's liabilities; 2) the agreements between Deleo and Medlogix

amounted to "a de facto merger or consolidation"; 3) Medlogix "is a mere continuation of" MMS; or 4) the agreements between Deleo and Medlogix were "a fraudulent effort to avoid liabilities of" MMS.  Id. at 292-93.

Here, the parties focus on the second scenario—de facto merger.  Though "[n]o single factor is necessary or sufficient to establish a de facto merger," the Massachusetts Supreme Judicial Court ("SJC") has identified four "factors that courts generally consider in determining" whether a de facto merger has occurred:

> whether (1) there is a continuation of the enterprise of the seller corporation so that there is continuity of management, personnel, physical location, assets, and general business operations; whether (2) there is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation; whether (3) the seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and whether (4) the purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.

Cargill, Inc. v. Beaver Coal & Oil Co., 676 N.E.2d 815, 818 (Mass. 1997); accord Milliken, 887 N.E.2d at 255-56.[2]

Because the pending motion is one by Medlogix for summary judgment, the Court draws all reasonable inferences in Vegnani's favor and considers whether Medlogix has established that the undisputed facts would preclude a jury from concluding the prerequisites to imposition of successor liability are satisfied here.  Medlogix has not met this burden.

---

[2] To the extent Medlogix implies or outright argues that any one factor requires a finding in its favor, e.g., Doc. No. 58 at 16-17 (urging that Vegnani cannot prevail absent evidence of shareholder continuity or in the face of evidence MMS never formally dissolved), that view has been roundly rejected by the Massachusetts courts and the First Circuit applying Massachusetts law.  E.g., DeJesus v. Park Corp., 530 F. App'x 3, 6-7 (1st Cir. 2013); Cargill, 676 N.E.2d at 818-20.

3

A number of facts bearing directly on the criteria for successor liability summarized above are either squarely in dispute or are undisputed and reasonably viewed as potentially supporting Vegnani's claim.  For instance, Vegnani points to the following evidence which, if credited by a jury, would support a finding that the relevant transaction was not a mere hiring of a salesman, as Medlogix urges, but a de facto acquisition of MMS by Medlogix:[3]

- At the outset of its discussions with Deleo in August 2017, Medlogix was openly considering acquiring MMS (not simply hiring Deleo), and Deleo was interested in selling MMS (not simply finding a new job).  E.g., Doc. No. 59-1 at 339-40, 342.

- The written agreement pursuant to which Deleo became an "independent contractor" of Medlogix in September 2017 required Deleo to "efficiently and seamlessly wind[] down" MMS's operations entirely—with Medlogix's assistance—and to ensure that "no new business" would operate under the MMS name; it did not simply require Deleo, as an individual, to cease his own work on behalf of MMS.[4]  Id. at 382, 384.

- In the press release publicizing the transaction with Deleo—the draft of which was circulated internally at Medlogix under a subject line referencing the "MMS Announcement"—Medlogix described its "partnership" with MMS, not simply its hiring of Deleo.  Doc. No. 64-1 at 644-46, 741.

---

[3] Medlogix invites the Court to "disregard" Vegnani's recitation of disputed facts, suggesting they are immaterial and that Vegnani's presentation of them "does not comply with the language or spirit of Local Rule 56.1."  Doc. No. 66.  Medlogix is wrong on both counts—in fact, the very Local Rule it cites expressly mandates such a submission—so its objection is OVERRULED.

[4] Despite its title, the agreement and the manner in which it was implemented bore many similarities to Medlogix's original (unconsummated) proposal to acquire MMS.  See Doc. No. 59-1 at 347-53.

- When it reached the relevant agreement with Deleo, Medlogix also hired a second MMS employee, Sarah Savage. Id. at 744-47. Thus, Medlogix employed half of MMS's staff as it stood at the time of the transaction. Doc. No. 59-1 at 360.

- After the transaction, Medlogix decided to keep MMS's website operational, with users automatically redirected to Medlogix's website. Doc. No. 59-1 at 241; Doc. No. 64-1 at 721. Medlogix paid the 2018 fee for the MMS website. Doc. No. 64-1 at 363, 719.

- After signing their agreements with Medlogix, both Deleo and Savage continued to work out of the MMS office space in Woburn, Massachusetts, using MMS equipment. Id. at 297-98, 303-04. Medlogix paid rent for that office, though at some point it characterized those payments as a loan to Deleo, and Medlogix decided when to terminate the lease. Id. at 189-90, 356-57, 556; Doc. No. 59-1 at 300, 454.

- Deleo and Savage retained and/or requested forwarding of their existing MMS phone numbers and e-mail addresses. Doc. No. 64-1 at 371-73, 438-40.

- At Medlogix's request, Deleo provided historical information including IME reports that MMS had coordinated for several years prior to the transaction. Doc. No. 59-1 at 433; Doc. No. 64-1 at 373-74.

- According to Deleo, MMS had no cash or other assets—besides his relationships with customers and doctors, his reputation, the Woburn office, and the website customers used to initiate IME requests—at the time of the transaction. Doc. No. 64-1 at 197.[5]

---

[5] Medlogix has urged that MMS had contracts and cash at the time of the relevant agreements with Deleo, that Medlogix did not receive those assets, and that this forecloses a finding of successor liability. But the record does not establish MMS had any contracts of value, and it contains evidence from which a factfinder could conclude that MMS had no cash to transfer. Besides Deleo's testimony describing MMS's lack of such assets, the record contains bank records showing that: in the month of September 2017, an MMS account at Cambridge Trust fluctuated from a "low balance" of "$-1,901.72" to a high of approximately $38,000 (apparently

5

- The January 2018 employment agreement between Deleo and Medlogix assigned to Deleo the title "Vice President of Sales," referred to him as an "Executive," and designated him a "member of senior management."  Doc. No. 59-1 at 416, 421.

- When Medlogix decided not to renew the lease for the Woburn office, Deleo notified the landlord that MMS "was acquired by" Medlogix, and that he had "sold [his] company to Medlogix."  Doc. No. 64-1 at 495, 524.  The landlord sent the refund for the security deposit directly to Medlogix.  Id. at 520, 533.

- Starting with an "upfront payment" at the time of the September 2017 transaction and continuing at least through the end of 2018, Medlogix made a number of payments to resolve outstanding MMS liabilities.  E.g., Doc. No. 59-1 at 380, 383, 454.  The record suggests these payments totaled approximately $180,000, with Deleo signing a promissory note for a list of disbursements that arose after the "upfront payment."  Id. at 447-54.  Most, if not all, of these payments were internally justified and approved by Medlogix because they were deemed necessary to permit MMS's business operations (via Deleo's sales) to continue.  E.g., id. at 413; Doc. No. 64-1 at 318-31.

- The record contains a number of statements and documents reflecting the tendency of various representatives of Medlogix to refer interchangeably to Deleo and MMS, both at the time of the relevant transactions and during depositions related to this action.  E.g., Doc. No. 59-1 at 360; Doc. No. 64-1 at 224, 330.

---

due to a direct transfer from Medlogix itself as part of the up-front payment Deleo received in the relevant transaction), Doc. No. 59-1 at 394-401; and MMS had to open a new bank account in June 2020 in order to receive a government loan or grant arising from a COVID-19 relief program, id. at 465.

Having evaluated the factual record, including the evidence highlighted herein, through the summary judgment lens, the Court concludes that triable issues exist as to all but one of the factors guiding a determination under Massachusetts law of whether Medlogix is liable to Vegnani as MMS's corporate successor. A factfinder could conclude that Medlogix acquired all or substantially all of MMS's assets, based on evidence that it acquired Deleo's connections to MMS's customers and doctors in the New England region, MMS's website, MMS's office and exam space, and MMS's historical IME information, and that it publicly touted its "partnership" with MMS. And, a factfinder could conclude that three of the four de facto merger factors identified in Cargill favor Vegnani. On the present record, the only factor that cuts decisively against Vegnani is shareholder continuity, as Deleo did not receive Medlogix stock as part of the transaction. However, a "continuation of the enterprise" might be found based on evidence that Deleo and Savage provided "continuity of management" and "personnel" when they transitioned from MMS to Medlogix, and that they continued working from the same physical location using the same contact information and equipment to perform the same business operations. Further, though Medlogix urges otherwise, the record favors Vegnani on the third Cargill factor. MMS "was required to, and did, cease all its operations" under the terms of Deleo's agreements with Medlogix. Cargill, 676 N.E.2d at 819. Though MMS "was not dissolved, that does not preclude a finding of de facto merger," according to the SJC. Id. Finally, the last Cargill factor strongly favors Vegnani, as the record contains ample evidence showing that Medlogix satisfied those obligations of MMS that it viewed as "necessary for the uninterrupted continuation of normal business operations" by MMS. It paid certain MMS creditors, settled claims against MMS by doctors, paid MMS's landlord, and covered the cost of the MMS website.

Though shareholder continuity is a "key factor" in assessing whether a de facto merger has occurred—and it favors Medlogix here—the SJC has "repeatedly instructed" that none of the Cargill factors are dispositive, and the First Circuit has reiterated that point.  DeJesus, 530 F. App'x at 6; see also, e.g., Lanee Great Plastic Co. v. Handmade Bow Co., No. SUCV200705245, 2010 WL 6650330, at *4-5 (Mass. Super. Ct. Dec. 26, 2010) (Fabricant, J.) (denying summary judgment where there was no continuity of ownership but evidence established genuine issues of material fact as to the remaining Cargill factors); Mass Printing & Forms, Inc. v. RKS Health Ventures Corp., No. Civ. A. 98-00489-F, 2000 WL 744564, at *2-3 (Mass. Super. Ct. May 22, 2000) (Gants, J.) (same); cf. Pontacolini v. Dailybreak/CP, LLC, No. 15-CV-1442-H, 2016 WL 1110318, at *2-3 (Mass. Super. Ct. Mar. 21, 2016) (Curran, J.) (denying summary judgment without considering shareholder continuity factor, as to which no evidence had been adduced, because triable issues existed as to other three Cargill factors).  Thus, under the totality of these circumstances, a jury could consider the relevant factors and conclude that the "real nature" of the transaction at issue supports imposition of successor liability against Medlogix.

Of course, a factfinder also could reject some or all of the evidence outlined above or draw inferences different than those urged by Vegnani.  But whether, in the end, the evidence will support Vegnani's claim of successor liability against Medlogix is a question for the jury to resolve after a trial.  It is not a question the Court can decide as a matter of law on the present record.  And, contrary to Medlogix's repeated entreaties—first in its motion to dismiss, and now on summary judgment—the answer to this question is not simply dictated by the terms of the relevant contracts.  As a creature of equity, the doctrine of successor liability not only permits but requires consideration of circumstances beyond the language of the written contracts to discern the true "substance and intent" of the transaction.  Milliken, 887 N.E.2d at 257.

For the foregoing reasons, Medlogix's Motion for Summary Judgment (Doc. No. 58) is DENIED.

SO ORDERED.

 /s/ Leo T. Sorokin
United States District Judge